AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Michael Jerome Basnight | ) | Case No. 11-8151-AEV |
| and | ) | |
| Michael Collins Randle, | ) | |
| | ) | |

Defendant(s)

FILED by ___ D.C.
MAY 13 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  01-04-11 through at least 04-22-11  in the county of  Palm Beach, and elsewhere  in the  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC. Section 1349 | Conspiracy to commit bank fraud, mail fraud and wire fraud. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Daniel J. Szczepanski, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 5/13/2011

_____
Judge's signature

City and state:   West Palm Beach, Florida

Ann E. Vitunac, United States Magistrate Judge
Printed name and title

# AFFIDAVIT

A.  **INTRODUCTION**

I, Daniel J. Szczepanski, having first been duly sworn, do hereby state the following:

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for five years and have worked several complex fraud investigations. I am presently assigned to the Miami Division's West Palm Beach Office of the FBI. My duties include the investigation of violations of mail fraud, wire fraud, bank fraud, and other sophisticated fraud schemes. Through my experience in the course of these investigations, I have become familiar with bank and mail fraud. I have been involved in two long term undercover operations, and have executed and assisted in numerous arrests and search warrants. During the course of these undercover operations, I have debriefed both confidential informants and cooperating witnesses regarding the habits and practices of people engaged in bank and mail fraud. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code (USC), Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2.  The following information is based on my personal knowledge, discussions with an undercover agent (UCE) involved in meetings and telephone calls with subjects, discussions with fellow agents, and review of tapes of consensually monitored telephone calls and meetings. Where the statements of others are related herein, they are related in substance and in part and are not verbatim. This Affidavit is being prepared only for the purpose of establishing the essential facts charging MICHAEL JEROME BASNIGHT and MICHAEL COLLINS RANDLE with the crime

of conspiracy to commit bank, mail fraud and wire fraud as defined in Title 18, United States Code, Sections 1349. Therefore, this affidavit does not contain all of the information known to me or other law enforcement agents concerning the offense.

**B.   FACTS**

3.   On 01/04/2011, BASNIGHT met UCE in Fort Lauderdale, Florida and the meeting was recorded via a hidden audio/video recorder. During the meeting, BASNIGHT told UCE that he was able to obtain business lines of credit and auto loans through his various contacts. BASNIGHT indicated that he had individuals who created bogus financial documents such as: W-2's, Dunn and Bradstreet (D&B) scores, tax returns, and pay stubs, which would be used to submit to financial institutions. BASNIGHT explained that he also used various credit unions to obtain auto loans where no car was actually purchased and the money was received by the applicant. BASNIGHT further stated, "we are corporate gangsters here." BASNIGHT told UCE that he charges $8,500.00 to create bogus documents that are submitted to the financial institutions. UCE agreed to utilize BASNIGHT'S services for obtaining various types of loans based on fraudulent documents. In return for his services, UCE provided BASNIGHT with a check made payable to MICHAEL BASNIGHT in the amount of $8,500, check number 1552. UCE handed this check to BASNIGHT.

4.   On 02/28/2011, during a consensually recorded telephone conversation, BASNIGHT told the UCE about MICHAEL RANDLE from Atlanta, Georgia. BASNIGHT described RANDLE as a former professional baseball player who was a "kingpin" that had served approximately six (6) to seven (7) years in federal prison because someone snitched on him. BASNIGHT explained that RANDLE owned a car dealership in Georgia, and was able to obtain loans for individuals by submitting fraudulent documents to various banks and credit unions.

5. In a subsequent consensually recorded telephone call on 02/28/2011, BASNIGHT conferenced RANDLE into the phone call with UCE. RANDLE explained to UCE that he had contacts and was able to obtain auto loans at various financial institutions. RANDLE requested access to UCE'S login and password from UCE'S credit report. RANDLE said he needed to access UCE'S credit report to see what was there and did not want to submit various loan applications at numerous financial institutions because it would generate credit inquiries and negatively impact UCE'S credit score. RANDLE provided UCE with his email address, Relentless26@gmail.com. UCE sent an email to Relentless26@gmail.com, which RANDLE responded back confirming that this was his correct email. After this confirmation, UCE sent another email to RANDLE and attached a copy of his most recent credit report so RANDLE could view the information before sending out loan applications to financial institutions.

6. On 03/14/2011, during consensually recorded telephone calls, UCE told BASNIGHT that he (UCE) received a phone call from Northrop Grumman Federal Credit Union (NGFCU) and that UCE was approved for a $75,000.00 auto loan. NGFCU is federally insured by the National Credit Union Administration (NCUA) and is a financial institution as defined by Title 18, United States Code, Section 20. UCE asked BASNIGHT to find out who had submitted his information to NGFCU for this loan because UCE had no knowledge that a loan application was submitted to NGFCU. BASNIGHT called UCE back and conferenced in RANDLE who confirmed that he (RANDLE) submitted UCE'S information to NGFCU for the $75,000.00 car loan. UCE informed BASNIGHT and RANDLE that NGFCU was requesting one (1) recent pay stub from UCE. RANDLE instructed UCE that if anyone from NGFCU called, UCE was to say he was busy and would call them back. RANDLE told UCE that he has "an Asian dude that be playing as you so we

3

don't trip up." This "Asian dude" has all UCE'S information and would pose as UCE when dealing with NGFCU on the telephone. RANDLE again confirmed that he (RANDLE) submitted the car loan application to NGFCU on-line.

7. On the car loan application, RANDLE explained to UCE that he listed UCE's annual salary at $165,000.00, and that UCE's position was Senior Director at the UC business. RANDLE listed on the application that the UCE resided at 4664 Gladiator Circle, Greenacres, FL 33463. RANDLE also indicated on the car loan application that the purchase price of the 2010 Porsche Panamera was $93,800.00, that UCE was putting 20% down, and that he was requesting an auto loan of $75,000.00. RANDLE said he can produce a title for this vehicle, but the car was sent out of the country. As previously discussed during consensually recorded telephone calls between UCE, BASNIGHT, and RANDLE, UCE was never going to take possession of the vehicle. RANDLE said he would send UCE a copy of a pay stub that UCE could then fax over to NGFCU.

8. On 03/14/2011, BASNIGHT called UCE back and told UCE that RANDLE had set up a Florida phone number for UCE, and that the person posing as UCE to NGFCU would be calling from this phone number to make it appear that the phone call was originating in Florida, when, in fact, this person posing as UCE was not in Florida.

9. On 03/14/2011, UCE received an email from RANDLE. In this email, RANDLE provided the name of his car dealership, Posh Auto Dealers, 1815 Hembree Road, Alpharetta, GA 30009, Phone (404) 890-5529, Tony Willis Sales Rep. Also in the body of this email, RANDLE provided UCE with the false information that he place in the loan application to NGFCU for the 2010 Porsche Panamera. RANDLE stated the following: "Email: joemike861@yahoo.com; Hired Date: 03/01/2007; Position: Senior Director; Falcon Fin is who you work for: Salary: 165k gross

4

yearly; lived in 4664 Gladiator Circle, Greenacres, FL 33463, for 4 years 6 months; purchase price 93,800 putting 20% down (18,760), financing 75,040, 4,300 miles on 2010 Porsche Panamera/4S." UCE does not know of the email address joemike861@yahoo.com, nor did UCE create this email address. UCE is not the Senior Director of Falcon Fin, nor does UCE have an annual gross salary of $165,000. UCE has never lived at 4664 Gladiator Circle, Greenacres, FL 33463. UCE was not purchasing a 2010 Porsche Panamera/4S, nor putting down $18,760, or seeking $75,040 in financing from NGFCU.

10. Also on 3/14/2011, UCE received an email from RANDLE which had a fraudulent pay stub attached. This was the pay stub RANDLE indicated that he would create for UCE to fax to NGFCU as proof of income for the 2010 Porsche Panamera auto loan.

11. On 03/15/2011, UCE sent a two (2) page fax from his UC office, located in West Palm Beach, FL to NGFCU whose fax number is (310) 965-0280. The area code 310 is located within the state of California. The first page was a cover sheet and the second page contained the fraudulent pay stub that RANDLE provided for UCE to send to NGFCU for the 2010 Porsche Panamera auto loan.

12. On 03/15/2011, during a consensually recorded telephone call, UCE informed RANDLE that he (UCE) faxed the bogus pay stub that RANDLE provided to NGFCU. UCE informed RANDLE that NGFCU was requesting that UCE open and fund a member account at NGFCU. RANDLE said that he would take care of opening the new member account for UCE at NGFCU. RANDLE told UCE to make sure NGFCU makes the check for the 2010 Porsche Panamera auto loan payable to his dealership, Posh Auto Dealers.

13. On 03/21/2011, UCE received an email from RANDLE and among the items attached with this email was a fraudulent Social Security card with UCE'S name and social security number. During a consensually recorded telephone call on 03/21/2011, RANDLE instructed UCE to sign the Social Security card and to fax it back to him. RANDLE also instructed UCE to fax a copy of the signed Social Security card to "Valentina" at NGFCU. RANDLE provided "Valentina's" fax number of (310) 965-0280.

14. On 03/21/2011, UCE signed the bogus Social Security card and faxed one copy to RANDLE at 1 (800) 685-9843 and faxed a second copy to "Valentina " from NGFCU at phone number (310) 965-0280. UCE sent both faxes from the UC office located in West Palm Beach, Florida.

15. On 03/22/2011, UCE received an email from RANDLE which contained a seven (7) page attachment. The attachment consisted of the final loan documents from NGFCU, which were to be signed by UCE.

16. On 03/23/2011, during a consensually recorded telephone conversation between UCE and RANDLE, RANDLE instructed UCE to sign the documents in the appropriate places and fax them back to him. RANDLE said that after he received the signed documents from UCE, he would then forward the final signed loan documents to NGFCU.

17. On 03/23/2011, UCE signed the final loan documents and faxed them back to RANDLE at 1 (800) 685-9843. The fax was sent from the UC business in West Palm Beach, Florida.

18. On 03/28/2011, during a consensually recorded telephone call, RANDLE confirmed to UCE that he received the check from NGFCU for the auto loan. RANDLE told UCE that he was waiting for the funds to clear and after the funds cleared he would pay UCE his share.

19. On 04/21/2011, UCE sent an email to RANDLE providing him with bank account information so that RANDLE could transfer $40,000.00, which represented UCE'S share from the fraudulent auto loan at NGFCU.

20. On 04/23/2011, RANDLE sent a text message to UCE stating, "funds are there" referring to the transfer of $40,000.00 to UCE'S bank account.

21. On 04/25/2011, during a consensually recorded telephone call, RANDLE confirmed to UCE that he had sent the $40,000.00 to UCE'S bank account. Also on 04/25/2011, UCE checked his bank account online and confirmed the $40,000.00 transfer from RANDLE. Banking records from UCE'S account were obtained and confirmed that on 04/23/2011, a $40,000.00 transfer occurred into UCE's account.

22. On 05/2/2011, during a consensually recorded telephone call, BASNIGHT said that RANDLE paid him $3,000.00, which represented his share from the fraudulent auto loan obtained at NGFCU.

23. On 04/20/2011, UCE received a notification from Creditreport.com indicating that there was an auto loan financed through BMW Financial Services in the amount of $123,679, in his undercover name. During a consensually recorded telephone call, UCE called BMW Financial Services to inquire about this auto loan. A representative from BMW Financial Services informed UCE that the respective auto loan was for a 2007 Bentley. UCE told the representative that he did not have possession of this vehicle, nor did he have any knowledge of the respective auto loan.

24. On 04/20/2011, during consensually recorded telephone calls between UCE and BASNIGHT, BASNIGHT confirmed that RANDLE obtained a 2007 Bentley GTC.

25. On 04/20/2011 and subsequently thereafter, Affiant received financial records from BMW Financial Services and Towbin Automotive related to the purchase of the 2007 Bentley GTC, Vehicle Identification Number (VIN) SCBDR33W17C046537. Based on a review of these records, there were numerous documents created which contained false information, as well as, forged signatures purporting to be the signature of UCE. Furthermore, records indicate that this vehicle is titled in the name of the UCE.

26. On 04/21/2011, during a consensually recorded telephone call between UCE, BASNIGHT, and RANDLE, RANDLE confirmed that they obtained a 2007 Bentley GTC from Towbin Motor Cars in Las Vegas utilizing UCE's credit information. In fact, RANDLE explained to UCE that he (RANDLE) created a Google voice phone number and email address for UCE, and that his partner who "sounded more Italian/White" posed as UCE on the telephone. RANDLE also confirmed that he was in possession of the vehicle in Atlanta. RANDLE thereafter emailed or caused to be emailed, photographs of this Bentley and the VIN to BMW Group Financial Services, which confirmed his possession of this vehicle. The VIN and vehicle description are identical to the VIN and vehicle description identified in the fraudulent loan obtained from BMW Financial Services.

27. On 04/22/2011, Affiant received a FedEx package from Towbin Automotive containing records pertaining to the certificate of title, purchase agreement, odometer disclosure statement, and cover letter for the purchase of the 2007 Bentley GTC. These records were mailed via FedEx from Towbin Automotive, 2550 S. Jones Blvd, Las Vegas, NV 89146 to an undercover

mailing address belonging to UCE in Greenacres, Florida.

28. Based on the above facts, Affiant asserts the above description of events establishes the essential facts constituting the offense charged in the criminal complaint and there is probable cause to believe that subjects MICHAEL JEROME BASNIGHT and MICHAEL COLLINS RANDLE committed the crime of conspiracy to commit bank, mail and wire, in violation of Title 18, United States Code, Sections 1349. Therefore, your Affiant requests that the court find probable cause and issue arrest warrants charging MICHAEL JEROME BASNIGHT and MICHAEL COLLINS RANDLE with the crime of conspiracy to commit bank, mail and wire fraud.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
DANIEL J. SZCZEPANSKI, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me this
13 day of May 2011 in West Palm
Beach, Florida.

_____
ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.  11-8151-AEV

**UNITED STATES OF AMERICA**

vs.

**MICHAEL JEROME BASNIGHT and
MICHAEL COLLINS RANDLE,**

   **Defendants.**
_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  \_\_\_\_\_ Yes  _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  \_\_\_\_\_ Yes  _X_ No

                                   Respectfully submitted,

                                   WIFREDO A. FERRER
                                   UNITED STATES ATTORNEY

                              BY:  _____
                                   JULIA A. PAYLOR
                                   ASSISTANT UNITED STATES ATTORNEY
                                   Florida Bar No. 0724785
                                   500 S. Australian Avenue, Suite 400
                                   West Palm Beach, FL 33401-6235
                                   Tel:  (561) 820-8711
                                   Fax: (561) 820-8777
                                   Julia.Paylor@usdoj.gov

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8151-AEV

### BOND RECOMMENDATION

DEFENDANT: MICHAEL JEROME BASNIGHT

$250,000.00
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   JULIA A. PAYLOR

Last Known Address: _____

What Facility: _____

Agent(s):   S/A DANIEL J. SZCZEPANSKI
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
U.S. IMMINGRATION AND CUSTOMS ENFORCEMENT
501 SO. FLAGLER DR., STE 500, WEST PALM BEACH, FL 33401